Very respectfully,

GEO. B. LAKE,

*Chief Justice.*

COBB and MAXWELL, J.J., concur.

---

IN RE GUY A. BROWN, REPORTER.

**Printing Supreme Court Reports.**    Under the provisions of section 19, laws 1879, p. 82, in connection with section 8, article VI., of the constitution, the reporter of the supreme court is only entitled to draw from the state treasury the cost of printing, stereotyping, and binding each volume of reports not exceeding $2.25 per volume. Expenses incurred by the reporter in preparing copy, reading proof, and packing and shipping are not properly chargeable against the appropriation made by the legislature for payment of said volumes. The salary paid to the reporter is exclusive of any and all other modes of compensation for work on the reports.

THIS was a matter coming before the court upon the report of Guy A. Brown, reporter of the supreme court, stating in substance as follows:

1. The receipt and disbursement of funds for the supreme court and library:

Jan. 1, 1875, Balance on hand .....................$      16.50
"    1, 1884, Receipts to date......................  10,178.12

                    Total ...........................  10,194.62
Disbursements 1875 to 1884........................  10,167.85

            Balance on hand.............................    26.77

2. Library fund for purchase of books:

Jan. 1, 1875, to Jan. 1, 1884, from sales ........$18,292.44
Paid into state treasury .............................  18,292.44

3. Charging of fees on admission of attorneys to practice in supreme court.

4. Publication of reports of supreme court.

Eleven volumes published and eleven thousand printed. Drawn from the treasury therefor, $24,484.50. Disbursements, for printing, stereotyping, and binding, $22,202.85; for employees assisting in preparing MS. for publication, reading proof, and packing and shipping, $2,281.65.

5. The method and manner of drawing money, disbursing the same, and settling therefor with the state.

In support of his action in disbursement of money for publishing the supreme court reports, the reporter submitted the following opinions in answer to questions submitted, viz.:

I. When the reporter of the supreme court shall have completed a volume of reports not less than 600 pages, and bound the same equal to volume 4, and delivered 1,000 copies with plates to the auditor, and voucher or claim for "1,000 copies of vol. —, $2,250," has the auditor any discretion, and is it not his duty to draw his warrant upon the treasury in favor of said reporter for the sum specified?

II. Has the auditor any legal right to enter upon any inquiry as to the actual cost of printing and binding and mechanical work involved in the production of said volumes?

III. Are the words "or so much thereof as may be necessary," in the appropriation acts, words of limitation applicable to a statute which like sec. 19 fixes a designated and definite sum payable for a certain service? In such case is it not the law that determines the "amount necessary," and not the individual officer?

IV. Under the law, is not the reporter made the publisher of the reports, and has he not the right to obtain the printing and binding wherever he sees fit, and when completed to draw pay at the rate of $2.25 per volume?

44

In re Brown.

OPINION OF GEORGE B. LAKE.

OMAHA, Feb. 16, 1884.

*Guy A. Brown, Esq., Lincoln, Neb.:*

DEAR SIR—I have examined the four questions propounded by you, and give the following answers: There are two statutes governing the subject of your inquiry, viz., sec. 19, ch. 19, page 200 of the Comp. Statutes, and the general appropriation act of 1883. The first clause of said sec. 19 relates exclusively to the duty of the reporter in the publication of the reports and the character of the mechanical work of the volumes produced. It requires the reporter from time to time as "sufficient material (opinions) is accumulated to form a volume of not less than six hundred pages" (there may be more doubtless in the discretion of the reporter) to "cause the same to be printed, stereotyped, and bound in a good and substantial manner," and equal in these respects to the fourth volume of the Nebraska Reports, this volume being made the test of mechanical excellence. The next clause of the section requires the reporter upon the completion of a volume to deliver a thousand copies, neither more nor less, together with the stereotyped plates thereof, to the auditor of public accounts, for the use of the state, for the fixed price of "two dollars and twenty-five cents per volume." This price is fixed by the legislature, and is to be paid to the reporter without regard to what the cost of the work may have been to him, whether more or less than that amount. If he be so fortunate as to produce a book which comes fully up to the standard of excellence given for less than this fixed price, it is that much to his advantage pecuniarily, but if it happen to cost him more, it is his loss. There is nothing in the law which requires the reporter to have the work done by any particular person, nor by the one who will do it for the least compensation. Neither is he obliged to furnish

or keep an account of his expenditures attending the publication and delivery of the books.   The state has no interest in these matters.   He must deliver books which at least come up to the statutory standard, but by what particular means he does this, or what it has cost him to do it, is not of the least consequence to the state.   Upon the delivery of the required number of the required excellence, the state becomes his debtor at the rate of $2.25 per volume, which the auditor is required to pay by his warrant on the state treasurer.   The only matter upon which the auditor is required to exercise his judgment or has any discretion is simply as to whether the books answer the above mentioned requirements of the statute.   With the cost to the reporter he has nothing whatever to do.   With the particular expenses incurred in the publication of the reports the state has not seen fit to concern itself.   By an act of the legislature, it has simply agreed to become the purchaser of a given number of copies of each volume as they successively appear, provided they reach a given standard of mechanical excellence.

Such being my views of the law (and I do not see how it is possible to take any other), my answer in brief to your first question is, that upon the delivery of 1,000 copies of any volume of Nebraska Reports, together with the stereotyped plates thereof, to the auditor, if he find that they are equal to volume 4 of said reports, it is his duty to draw his warrant upon the state treasury in favor of the reporter for what they come to at $2.25 per volume, viz., $2,250.

And second, I answer that the auditor has no right to enter upon an inquiry as to the cost of printing and binding of the books, nor as to any other expense incurred in their production.

To your third question, I answer that the clause, "or so much thereof as may be necessary," found in the appropriation act of 1883, has no possible application to the amount to be paid for each thousand copies of the reports.   As I

In re Brown.

have before said, section 19, above referred to, fixes the
price for the auditor to pay per volume, which price he
has no authority either to increase or diminish.  He should
see to it that the books delivered fairly reach the standard
of required excellence, and if they do, he must pay for
them.   The only possible application these words could
have would be upon the contingency of the non-publication
of one or more of the volumes, which the legislature seem
to have anticipated.   The appropriation for this particular
purpose seems to have been made with the view that at
least three volumes—14, 15, 16—would be published be-
fore the next session of the legislature, and a gross sum,
viz., $6,750, to cover the entire cost of one thousand copies
of each at the rate of $2.25 per copy, was named in the act.
Now, if but one or two volumes shall be published during
the life of this appropriation, which, under section 19, ar-
ticle 3, of the constitution, will extend to the end of the
first fiscal quarter after the adjournment of the next regular
session of the legislature, then the whole of the appropria-
tion will not be "necessary."   But if all three volumes
shall be published, and the reporter delivers the required
number, together with the plates on which they were
printed, and they conform to the requirement of the statute,
then the whole amount appropriated will be "necessary"
to pay for them.

The fourth question has been fully answered in what I
have already said.   It is clear that under the law the re-
porter is made the publisher of the reports, and has the
right to have the work done wherever he sees fit.   He is
to furnish books of a given quality and of a certain num-
ber, and when he does so he is entitled to receive a fixed
price, viz., $2.25 per volume, neither more nor less.   If
the work should be much better even than volume 4, which
is made the test, or if it should cost the reporter considera-
bly more than $2.25 per copy, this price would still be the
exact measure of his compensation for what he is required

to furnish the state. ' This, I think, fully covers the ground of your inquiry, and is respectfully submitted.

GEO. B. LAKE, '

*Attorney at Law.* '

OPINION OF S. H. CALHOUN.

NEBRASKA CITY, Feb. 16, 1884.

*Guy A. Brown, Esq.:* '

DEAR SIR—Your letter of yesterday duly received. Section 19 of chapter 19 is a general law, not one enacted for temporary purposes like an appropriation bill: the one stands until it is repealed or amended, and prescribes a rule of action for each succeeding report as long as it thus stands; the other virtually dies when the term which it provides for has expired. Now, as a law, the first is of a higher grade, and if there is any conflict it must stand. But there is no real conflict. The expression in the appropriation act of 1883, "or so much thereof as may be necessary," does not apply to the auditor; it applies only to the different officers for whose use the several appropriations are made. They are the sole judges of how much of the sums of money thus placed to their credit is necessary to be used. It is not for the auditor to say whether or not a new chair is necessary for the governor's office, or whether it shall cost $5 or $10. If the auditor alone may determine the amount of expenses to be allowed in publishing the reports, why may he not say that the whole is unnecessary, and thus stop their publication altogether? The section that I have referred to provides that the auditor, when certain things are done, "shall draw his warrant" for the same at the rate of $2.25 per volume. There is no repeal of this law, and there is only one way to alter its provisions, and that is by a strict compliance with section II., article III., of the constitution.

Yours respectfully,

' S. H. CALHOUN.

OPINION OF THE COURT.

COBB, CH. J.

Guy A. Brown, reporter, having by direction of the court submitted a report of the administration of his office since the creation thereof by the adoption of the present constitution, and upon careful consideration thereof, the court deems it fitting and proper to make observation, and take orders thereon.

The report covers the entire period of time since the first appointment of a reporter in 1875, and applies to the duties of said officer as clerk of the supreme court and librarian of the law and miscellaneous library of the state, as well as to his duties as reporter. It is divided into five parts as follows: 1. The receipts and disbursement of funds for the supreme court and library. 2. The condition and management of the library fund. 3. The charging of fees for the admission of attorneys to practice in the supreme court. 4. The publication of the reports of the supreme court. 5. The method and manner of drawing money, disbursing the same, and settling therefor with the state.

As to the matters arranged under the 1st and 2d heads, no suggestion of mismanagement of any part of these funds has ever reached the ears of any member of the court. The vouchers for their disbursement have been presented to the legislature at each of its biennial sessions, and no doubt examined by the appropriate committees; so that even if the regular duties of the court were not such as to forbid the devotion of sufficient time to the examination of the accounts and vouchers running through the nine years of time in question, we would scarcely feel justified in entering upon the discharge of such duty. But had we not the greatest confidence that such funds have been intelligently expended, and honestly disbursed and accounted for by the

reporter, no consideration of convenience would prevent the court from making such examination.

As to the matter stated under the 3d head, the statute seems to contemplate the original admission of attorneys in this court, as well as in the district courts, and such has been the practice to some extent. When attorneys are admitted in that way, the clerk must keep a record of the appointment of a committee of examination as well as of the making of its report and its character, also receive, file, and preserve such report, and in all cases he must prepare and preserve the written oath of admission, and prepare and deliver to the licentiate a certificate, more or less expensive, of such admission. For this service the clerk is entitled to some compensation, although no fee is provided therefor in the statutory fee bill. Such omission should have been provided for by rule of court, and the matter having been thus far overlooked, such a rule will be adopted simultaneously herewith, in which it will be sought to fix such fees at a rate which will be reasonable and just.

4. The publication of the reports of the supreme court. Under this head the reporter states that he has drawn from the state treasury the sum of $24,484.50 for eleven thousand volumes of reports (being volumes four to fourteen, both inclusive), one thousand copies of each volume. That for the mechanical work performed on these volumes, including the printing, binding, and stereotyping, he has paid $22,202.85, and the balance, amounting to $2,281.65, to persons employed to assist him in preparing the manuscript for publication, reading proof, etc., and the expenses connected with packing and shipping the books after their delivery to the library, for which no appropriation was otherwise made prior to the year 1883. The reporter proceeds to say that in the drawing of the appropriations he has simply asked for and received the price in payment for each 1,000 copies delivered. That he has considered that section 19 made the reporter the publisher of the reports,

for which he is entitled to receive $2.25 per volume, just as the former reporter received $4.50 per volume, and for the correctness of this opinion, reference is made to the written arguments of two eminent counselors accompanying said report.

The provision of statute under which these volumes of the reports were published is as follows:

"Sec. 19. It shall be the duty of the reporter of the supreme court to prepare the opinions of said court for publication as fast as they are delivered to him, and when sufficient material is accumulated to form a volume of not less than six hundred pages, he shall cause the same to be printed, stereotyped, and bound in a good and substantial manner, equal to volume four of said reports. He shall deliver one thousand copies of each volume, with the stereotype plates thereof, to the state auditor, who shall draw his warrant in payment thereof at the rate of two dollars and twenty-five cents per volume." Comp. Stat., chap. 19.

Looking alone to the letter of this provision, it is probably susceptible of the construction placed upon it by the reporter, and when we consider that he is sustained in such view by gentlemen of eminent legal ability, and of long connection with the judicial and legislative history of the state, we cannot doubt his honesty and good faith in placing such construction upon the law and his action thereunder. And yet we are quite unable to adopt that construction.

The constitution, section 8, article VI., provides as follows:

"Sec. 8. There shall be appointed by the supreme court a reporter, who shall also act as clerk of the supreme court and librarian of the law and miscellaneous library of the state, whose term of office shall be four years, unless sooner removed by the court; whose salary shall be fixed by law, not to exceed fifteen hundred dollars per annum."

The nature and character of the reporter's duties as such

In re Brown.

are sufficiently indicated by the name of his office, and their extent is clearly set out by the provisions of the statute above quoted. These duties clearly embrace the preparing the opinions for publication, writing all that part of each case sometimes called the report as distinguished from the syllabus and the opinion, as well as the title page, table of cases and citations, index, and such notes and other special matter as may be deemed necessary and proper by the reporter or the court, superintending the printing, reading, and correcting the proof, etc., and to these duties the law adds that of causing the reports to be "printed, stereotyped, and bound," and to deliver a thousand copies of each bound book to the state auditor. For this service the constitution provides that the reporter shall receive an annual salary. That, in the opinion of the court, is exclusive of any and all other modes of compensation.

While the statute does not make it the duty of the reporter to let the printing, stereotyping, and binding of the reports to the lowest bidder, yet it is the spirit of the law that he should protect the interest of the public in the matter committed to his charge by procuring good and honest work at the lowest rates reasonably available. The rate fixed by the statute of $2.25 per volume must be regarded only as the limit of cost, beyond which the reporter is not allowed to go in the publication of the reports. But if the object is accomplished at a less outlay, then that advantage must inure to the state, and not to the private advantage of any individual or officer. In the matter of the publication of the reports, the reporter is and must be regarded as a disbursing officer of the state, and not as a contractor.

From these views it necessarily follows that the sum of $2,281.65 has been erroneously drawn from the treasury by the reporter on account of printing, stereotyping, and binding the reports hereinbefore enumerated, and is now in his hands, and while the law has given this court no

direct control over the matter, yet, the reporter being an officer of the court as well as of the state, the following orders are made:

1. Directing the payment of said sum of $2,281.65, with interest from dates the same was respectively drawn, into the state treasury, taking the receipt of treasurer therefor, and exhibiting same to court at next session thereof.

2. Directing that the report, with arguments of counsel attached thereto, and these observations and orders thereon, be spread on the records of the court.

3. Establishing a rule concerning admission fee of attorneys. In case of original admission, upon the report of the committee, 75 cents; admission on motion, 50 cents. Where attorney may desire a certificate, an additional fee of $1.00.

REESE, J., concurs in foregoing.

I concur in requiring the repayment of the money.

SAMUEL MAXWELL.

Dated March 22, 1884.

IN COURT, May 29, 1884.

The said Guy A. Brown having exhibited to the court the receipt of the state treasurer, dated March 22, 1884, for the sum of $2,802.40, it is ordered that the same be spread on the minutes of the court in full satisfaction of the order of court heretofore entered.

AMASA COBB, Ch. J.